·(21 Misc. Rep. 150.)

### SMITH v. MATTHEWS et al.

(Supreme Court, Special Term, Erie County. August, 1897.)

1. LIBEL—EVIDENCE—ADMISSIBILITY.
In an action for libel for publishing a statement that plaintiff, a married woman, had eloped with one R., the chastity of plaintiff was given great consideration on the question of damages. *Held*, that evidence of adulterous intercourse between plaintiff and R. was admissible for the purpose of reducing the damages.

2. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—SUFFICIENCY.
If newly-discovered evidence is sufficient to render a different verdict probable, a new trial may be granted.

3. SAME—LACHES.
Defendants, having obtained a new trial on appeal, discovered new evidence. Afterwards plaintiff made a further appeal, and prevailed. Defendants then moved for a new trial because of the newly-discovered evidence. *Held*, that they had not been guilty of laches in filing the motion.

Action by Juliette C. Smith against George E. Matthews and another for libel. From a judgment of the general term (29 N. Y. Supp. 1058) reversing a judgment for plaintiff, she appealed, and prevailed (46 N. E. 164). On motion by defendants for a new trial. Granted.

Charles B. Wheeler, for the motion.
Baker, Schwartz & Dake, opposed.

SPRING, J. The defendants are the proprietors of the Buffalo Express. On June 14, 1890, they caused to be published in the regular morning editions of that paper, and the following day in the Illustrated Express, an article charging the plaintiff, a married woman, residing in the city of Toronto, in the province of Ontario, with having eloped with one Edward C. Rutherford. An action of libel followed these publications, and resulted in a trial and a verdict for the plaintiff of $4,000. The general term of the superior court (29 N. Y. Supp. 1058) reversed the judgment for plaintiff en-

tered on this verdict, and, instead of availing herself of the new trial, she appealed to the court of appeals (46 N. E. 164), which court reversed the general term, thus sustaining the original recovery. There was no justification in the answer of the charge contained in the newspaper article, and in fact a retraction had been published by defendants long before the trial, fully exonerating plaintiff from the accusation; so the trial was, in effect, merely an assessment of damages. The affidavits now presented on behalf of defendants do not sustain the specific charge of elopement, but tend to show Mrs. Smith, the plaintiff, was not a chaste woman, and was carrying on illicit amours with the very man with whom it was charged she had clandestinely run away. To comprehend the scope and relevance of these affidavits, it is essential to understand precisely the basis on which this large verdict was rendered. As already stated, the charge in the newspaper article was that plaintiff had run away with Edward C. Rutherford; and that this statement was untrue in fact was conceded. The testimony showed the plaintiff was a married woman, the mother of two children, and accustomed to associate with the best people of Toronto, and hence it appeared to the jury she was a chaste, refined lady, and had been the victim of a gross and unfounded accusation. Beyond this, in submitting the case to the jury, the court properly enough commented at some length upon the chastity of plaintiff, as well as her excellent reputation and prominence in Toronto society, so her purity as a distinct fact, with these other elements, was pressed home to the jury for their consideration in measuring the damages the defendants must pay. To quote from the charge of Judge Hatch:

"You see that article is * * * a very gross libel, for the reason that its necessary construction is that it charges a respectable woman with the loss of her honor; and not only the loss of her own honor, but also the degradation of her husband and her family. When written of and concerning a woman of chaste character, it would be difficult to formulate a charge against such a person that would be more damaging or detrimental to her standing in the community in which she lives."

And again, in his lucid explanation to the jury of what constituted actual damages, the trial court stated the following:

"You are to take into consideration, not alone the circumstances and conditions of the party, but you are to take into consideration the natural feelings which flow and would be aroused in the mind of a chaste and honorable woman, and the pain and anguish of mind which such a charge would create."

And in the opinion of the court of appeals, Judge Bartlett, after stating a smaller verdict might have met the ends of justice, held the large verdict was justifiable, because the article "attacked, without the shadow of justification, the good name of an innocent wife and mother, charging her, in effect, with unfaithfulness to her marriage vows, and the abandonment of her children." It is an irresistible conclusion, therefore, that this verdict was recovered and sustained on the hypothesis, not alone that her reputation among her acquaintances was good, and above criticism, but that she was, in fact, a chaste woman.

Counsel for the plaintiff, in a brief of much learning, and showing exhaustive research, has cited authorities tending to establish that

it is only the general reputation of plaintiff that can be proven in reduction of damages in an action of libel; and that, perhaps, is the trend of judicial construction. Wuensch v. Association, 4 App. Div. 110, 38 N. Y. Supp. 605; Thibault v. Sessions, 101 Mich. 279–290, 59 N. W. 624; Steinman v. McWilliams, 6 Pa. St. 170; Townsh. Sland. & L. (4th Ed.) § 405; 2 Tayl. Ev. § 361. These authorities are upon the assumption that the truth or falsity of the distinct charge embodied in the libelous article is the issue, and the defendant is not permitted to travel outside of that rut unless he seeks to attack the general standing of the plaintiff, or confine himself to cross-examination. In personal actions, however, like seduction, criminal conversation, assault and battery, chastity has been held to be in issue, and specific misconduct of plaintiff can be shown. Ford v. Jones, 62 Barb. 484; Smith v. Masten, 15 Wend. 270; Young v. Johnson, 46 Hun, 168; Wandell v. Edwards, 25 Hun, 498; Gulerette v. McKinley, 27 Hun, 323. We are met on this motion with an anomalous situation, and the drastic rule contended for by plaintiff ought not to control. The chastity of plaintiff was somewhat prominently presented to the jury, and was undoubtedly an item of importance in estimating the damages to plaintiff, and was, therefore, an issue to the extent of enhancing the recovery. We have, therefore, a verdict based upon two distinct elements: First, her general reputation, and, secondly, her chastity; and as to the latter it was wholly without warrant if the affidavits of defendants' witnesses give a truthful narration of her relations with Rutherford. If these affidavits related to her general reputation, instead of her personal misconduct, certainly they would be pertinent as bearing upon a vital issue in the case. They are equally cogent in imputing unchastity when her virtue and her fidelity to her husband were considered by the jury, and were, therefore, made an issue in the case. Again, the pith and sting of the charge of the elopement were not simply that she was running away with Rutherford, but that the relation between them was criminal. The charge implied adultery. The affidavits on the part of defendants now show, or tend to show, she was carrying on an amorous intercourse with this man Rutherford. That is not showing specific acts within the rule laid down in the cases cited by counsel for plaintiff. While not establishing the elopement to be true, they do prove that the vice which makes the substance of the charge was true in fact. If the elopement had occurred, it publicly proclaimed what had been secretly the conduct of these parties, if the affidavits are to be credited. Plaintiff might have cohabited with Rutherford for years in the city of Toronto, and this lascivious relation have remained unknown to her social intimates, and her general reputation have been unexcelled, but, if she is charged with an offense with Rutherford, the gist of which is adultery, certainly the author of the charge ought to be permitted to show her intercourse with this man in reduction of damages. This is not a justification, nor technicality in mitigation, but in diminution or reduction, of damages. By suing for libel she may not open the door for an examination of all her past intercourse with every one, but she does invite an inspection of her relations with Rutherford. Assuming the affidavits on behalf of

defendants are truthful, plaintiff has recovered a verdict to which she is not entitled.    It is a false one.    She and her paramour masqueraded before the jury in false colors.    Her chastity she has been deriving revenue from and parading so ostentatiously was a flimsy screen covering her adulterous intercourse with Rutherford.    If that is true, defendants ought to be given a new trial to present to the jury the real relations between herself and this man.

Nor are defendants chargeable with laches in making this motion. The information came to them after the reversal of the general term. They had then obtained a new trial, and, of course, the motion was unnecessary.    The plaintiff appealed directly to the court of appeals, and during the pendency of the case there it would have been idle to make the motion, for the decision of the general term might be affirmed, which would give the opportunity for a retrial which defendants sought.    Plaintiff's counsel cites Fisher v. Corwin, 35 Hun, 253, in support of his contention that a new trial on the ground of newly-discovered evidence will not be granted after affirmance of judgment; but the facts of that case are distinguishable from this.    In Henry v. Allen, 147 N. Y. 346, 41 N. E. 694, the plaintiff, while the case was pending in the court of appeals, made a motion to have the return transmitted to the court below, to enable him to make a motion for a new trial on newly-discovered evidence.    The court denied the motion on the ground that such a course was unnecessary, as the motion could be made without the authority or order of the court of appeals. The motion was subsequently made at a special term of this court, and denied, not, however, for want of power to entertain it, but on the merits.    See, also, Anderson v. Sherwood, 9 N. Y. St. Rep. 636.    The affidavits presented on this motion are voluminous.    They have been discussed and sifted by the respective counsel with very much elaboration and energy and feeling.    I am not going into any minute analysis of them.    Several witnesses, apparently disinterested, among them former servants and employés of the plaintiff and her husband, each possessing the opportunity to know the facts he details, testify to an intimacy between plaintiff and Rutherford which a jury might fairly say was illicit and adulterous.    These affidavits are pointedly met on behalf of plaintiff, but it is not for this court to dispose of this controversy, which is obviously a question of fact of sufficient moment and closeness to justify its determination by a jury. The test seems to be that, if a different outcome is probable, if the jury can fairly reach another conclusion, then the court, in the exercise of its legal discretion, is justified in ordering a new trial.    Plate Co. v. Barclay, 48 Hun, 54; Sistare v. Olcott (Sup.) 5 N. Y. Supp. 114. There is no procrustean rule prescribed as a guide for the decision of motions of this kind.    Each case is a law unto itself, and the promotion of substantial justice is the aim in their determination.    Barrett v. Railroad Co., 45 N. Y. 628–632; Clegg v. Newspaper Union, 51 Hun, 232–235, 4 N. Y. Supp. 280.    Within these principles the defendant should have an opportunity to show the exact facts as to the intercourse plaintiff had with Rutherford.    If pure and honorable, the defendants would probably suffer additional punishment from this new attack.    If discreditable and wanton, she ought not to be

conspicuously exalted as a chaste woman and faithful wife by a large verdict. The restricted rule that her public reputation should absolutely control, to the exclusion of her real character, as viewed in the light of her conduct with Rutherford, ought not to prevail. Whether an amendment to the answer is necessary I do not determine. That question is not up on this motion. If the defendants elect to propose an amendment, it can be done at special term upon a proper application therefor. The motion for new trial is granted upon defendants' paying to plaintiff's attorneys within 30 days after the entry of the order herein all the costs and disbursements taxed on the action, and in case of a failure so to do the motion is denied, with costs.

Ordered accordingly.