directed the respondent to approve of the bond as presented. That left him no discretion to pass upon the sufficiency of the securities upon such bond. The mandamus should be modified so as to provide that the respondent approve of the relator's bond, provided the same be in proper form, and properly executed, and the sureties thereto sufficient; and, as so modified, the order should be affirmed, without costs of this appeal to either party. All concur.

KRING v. NEW YORK CENT. & H. R. R. CO. (two cases).

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
    That the newly-discovered evidence is cumulative does not necessarily afford ground for denying a motion for a new trial, where the issues are within narrow limits, and the testimony of the plaintiff and his two disinterested witnesses is flatly contradicted by defendant's agent and three disinterested witnesses.

2. SAME—POWER OF COURT.
    A motion for a new trial because of newly-discovered evidence is addressed to the sound discretion of the court, and whether it should be granted or not involves the inquiry whether substantial justice has been done.

Appeal from trial term, Onondaga county.

Action by Jesse Kring, an infant, by his guardian, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff entered on a verdict for $8,000 and costs, and an order denying a motion for new trial on the judge's minutes, defendant appeals. Also, appeal from an order entered on the 10th day of May, 1899, denying defendant's motion for a new trial, made upon the ground of newly-discovered evidence. The appeals were argued together. Reversed on conditions.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

L. B. Williams, for appellant.
M. E. Driscoll, for respondent.

McLENNAN, J. The action was commenced on the 13th day of September, 1898, to recover damages sustained by the plaintiff, alleged to have been caused by the negligence of the defendant. On the 13th day of November, 1898, between 5 and 6 o'clock on the afternoon of that day, the plaintiff, who was then about 11 years of age, boarded a train of the defendant known as the "Dewitt Special," as it was passing through the eastern part of the city of Syracuse. It is conceded that the plaintiff was a trespasser upon the train,—boarded it without right or authority, and solely for the purpose of amusement. The plaintiff got upon the train by catching hold of the railing at the forward end of the rear car, and swinging himself up onto the steps leading to the front platform. He stood upon the steps, facing to the south, and in that way rode a short distance, and until, as he says, he was kicked from the platform by the

conductor, fell to the ground, and the wheels of the rear truck passed over his leg, which made amputation necessary. The plaintiff, who was sworn as a witness in his own behalf, testified, in substance, that he saw the conductor come out of the rear car onto the front platform, where he (the plaintiff) was riding upon the steps, and that as he turned around, preparing to jump from the car, the conductor, without warning, and without even speaking to him, kicked him in the back and threw him to the ground, and in such manner as to cause his leg to go under the wheels of the car. Robert L. Wells also testified on behalf of the plaintiff. He stated, in substance, that he saw the plaintiff standing on the steps, as described by him; that he saw the conductor come out of the car and kick the plaintiff, saw him fall to the ground, and saw him after the wheels of the car had passed over his leg. The conductor's name is James Coogan, and at the time of the trial, and while Wells was giving his testimony, he was asked to point out the person who kicked the plaintiff. He picked out and identified James Weaver, a witness for the defendant, as the man, although Coogan, the conductor, was at the time present in court, and sitting near the witness. Philip Van Alstyne, a boy 13 years of age, testified that he saw the conductor make a kick at the plaintiff, and that he saw the plaintiff fall. The foregoing is substantially all the evidence given by the plaintiff upon the trial bearing upon the disputed questions of fact. The defendant, by its answer, and also upon the trial, took the position that neither its conductor nor any other of its employés kicked the plaintiff, or in any way interfered with him; in fact, that they did not know he was upon the train, or that he had sustained any injury, until after the accident. To support its contention the defendant called as a witness James Weaver, the man who was identified as the conductor by plaintiff's witness Wells. He testified that he was standing upon the south side of the front platform of the rear car, riding from Syracuse to his home, in Dewitt; that while he was there he saw the plaintiff get upon the car from the north side, immediately opposite him; that he (the witness) told the plaintiff that he was in danger of falling and getting hurt; that the plaintiff thereupon jumped from the car, voluntarily and without interference on the part of anybody, and received the injury complained of. The witness testified positively that the conductor was not present, nor any other employé of the defendant; that no one interfered with the plaintiff, but that he left the place where he was standing of his own volition. William H. Brookings testified that he was sitting in a seat at the front end of the car, and in full view of the platform in question; that he saw the plaintiff and the witness Weaver both upon the platform; and he states positively that when the boy got off the conductor was not present; that the boy was not kicked at all, or interfered with by any one, but that he jumped off the train of his own accord. The conductor, James Coogan, testified that he did not know the plaintiff was upon the train; did not see him upon the platform at all; that he did not kick him or interfere with him in any way; and that he was in another car, attending to his duties as conductor, at the time of the accident, and learned

of it only through information given him by his trainman. George Suiter, the trainman, also testified that when the plaintiff fell the conductor was in another car; was not upon the platform where the plaintiff was; and that he (the witness) informed the conductor of the accident, going to another car for the purpose, where he found the conductor in the discharge of his duties. It will be seen that a sharp question of fact was presented by the evidence. The plaintiff, who was interested, and two other disinterested witnesses, gave evidence tending to support the plaintiff's contention that he was kicked from the car by the defendant's conductor, and in such manner as to cause the injury sustained by him. The conductor, who may be said to be interested, and three other disinterested witnesses, gave evidence flatly contradicting the evidence of the plaintiff and his witnesses. The question of fact thus raised was properly submitted to the jury by the learned trial justice, and a verdict of $8,000 was rendered in favor of the plaintiff. Our attention has not been called to any ruling made upon the trial which would require a reversal of the judgment.

The serious question is presented by the appeal from the order denying defendant's motion for a new trial upon the ground of newly-discovered evidence. Upon such motion the defendant presented the affidavit of one Georgia Curtis, in which she states that she saw the accident; that she saw the plaintiff fall from the car; that no one kicked or touched him; that, when the car passed over his limb, she immediately went to him; that the plaintiff said to her, "I went to jump off, and caught my foot." In another affidavit she states that she did not make known the facts stated by her, before the trial, because she did not wish to be drawn into a lawsuit, and did not want to go into court; that for that reason she agreed with another affiant, Nellie Harris, to say nothing about the transaction. Nellie Harris, in her affidavit, states positively that she saw the accident; saw the plaintiff fall from the train; that he jumped from the car of his own volition; that no one was upon the platform with him; that no one kicked or touched him. The affiant also states that she did not say anything about the accident until a short time before the affidavit was made, and that she had agreed with Georgia Curtis not to say anything about it. The affidavit of Nelson Meniseec was also presented, in which he states that he saw the accident; that the boy jumped from the train of his own volition; that no one pushed or touched him; that the conductor was not on the platform or steps at all when the boy fell. The affidavits of Dix H. Rowland, an attorney who was in the employ of defendant's attorneys prior to and at the time of the trial, and of Alexander H. Cowie, one of defendant's attorneys, show conclusively that in preparing for the trial they had no means of knowing, or reason to suspect, that the persons who made the foregoing affidavits knew anything about the accident, or could give evidence relevant to the issues involved; that they made diligent inquiry among the people who resided in the vicinity of the place where the accident happened, to ascertain all the facts connected therewith, as soon as they were retained to defend the action; and that they had no knowledge that

the persons above referred to knew anything about the same. In opposition to the affidavits presented on behalf of the defendant, the plaintiff presented a large number of affidavits,—some of them to the effect that after the plaintiff's leg was run over he was unconscious, and could not have made the statement testified to by Georgia Curtis, and others stating, in substance, that Nellie Harris and Nelson Meniseec were not in a position to see the accident or the plaintiff when he fell from the car, and that neither of those three persons went near the boy as he lay upon the ground, as stated by them in their affidavits. The plaintiff also presented affidavits to the effect that the reputation of Georgia Curtis and Nellie Harris for truth and veracity was bad. Plaintiff's affidavits are not of such a character as to be convincing of their truthfulness, but, on the contrary, there are some indications that the affiants are mistaken in respect to some of their statements. The same may be said of the affidavits presented by the defendant. It is apparent that the evidence of the three persons whose affidavits were presented by appellant's counsel in support of the motion for a new trial, if believed, would have an important bearing upon the determination of the issues involved in this case, and there is no such inherent improbability in the evidence as to enable us to say that it would not be believed. Robert L. Wells, the witness called by the plaintiff, appears to be a roving character, without steady employment, apparently of not very good reputation; and this, taken in connection with the fact that he identified a person other than the conductor as the person who kicked the plaintiff from the train, greatly weakens his testimony. Upon the trial the plaintiff's claim depended entirely upon the evidence of this witness, the plaintiff, and the little boy, Philip Van Alstyne. On the part of the defendant, the conductor, who had been in that position for more than 20 years, testifies positively that he in no manner interfered with the plaintiff; did not know he was upon the train; and he is corroborated by three other witnesses, who, if they are to be believed, had ample opportunity to know what the facts were in the case. Under those circumstances, it would seem that it may fairly be said that the new evidence is such that, if given and believed, it would probably have changed the result of the trial, and that therefore the ends of justice will be promoted by allowing the defendant to present such evidence upon another trial. The rule which should govern in considering a motion of this kind is well settled. It must appear that the evidence has been discovered since the trial; that it could not have been obtained upon the former trial by the exercise of reasonable diligence; that it is material to the issue, and goes to the merits of the case; that it is not merely cumulative; and that its character is such that it would probably have changed the result. People v. Holmes, 32 App. Div. 148, 52 N. Y. Supp. 939; Glassford v. Lewis, 82 Hun, 46, 31 N. Y. Supp. 162; Roberts v. Bank (Sup.) 14 N. Y. Supp. 432. That the newly-discovered evidence is cumulative does not necessarily afford ground for denying the motion for a new trial. Keister v. Rankin, 34 App. Div. 288, 54 N. Y. Supp. 274; Silver-Plate Co. v. Barclay, 48 Hun, 54. The rule which should control upon a motion

of this character is laid down in Vollkommer v. Railroad Co., 23 App. Div. 88, 48 N. Y. Supp. 372. The facts of that case are analogous to the facts in the case at bar. After reciting the facts, the court says:

"The general principle which should govern courts in disposing of applications of the character of the one now before us is well stated by Judge Allen in Barrett v. Railroad Co., 45 N. Y. 628: 'Motions to set aside verdicts as contrary to evidence, as well as motions for a new trial upon the ground of newly-discovered evidence, are not governed by any well-defined rules, but depend in a great degree upon the peculiar circumstances of each case. They are addressed to the sound discretion of the court, and whether they should be granted or refused involves the inquiry whether substantial justice has been done; the court having in view solely the attainment of that end.' In this case we can only say that, considering its peculiar circumstances, the closeness of the issue, and the uncertainty of correctness in the determination of that issue, we are of the opinion that justice requires that the defendant should have an opportunity to again present the case, with the new evidence that has been brought to light." People v. Glasgow (Sup.) 52 N. Y. Supp. 24.

In the case at bar the issues are within narrow limits. It can hardly be said that the weight of evidence is with the plaintiff. The facts, as related by him and his witnesses, are extraordinary, to say the least. They show a degree of brutality and recklessness on the part of the conductor which challenges our belief. Considering all the circumstances, we are of the opinion that the order denying defendant's motion for a new trial upon the ground of newly-discovered evidence should be reversed, and a new trial granted, but upon condition that the defendant pay the costs of the action after the service of the answer, and the costs of this appeal, within 20 days.

Order denying motion for a new trial on newly-discovered evidence reversed, and motion for a new trial granted, on condition that the appellant pay the costs of the action after the service of the answer, and the costs of this appeal, within 20 days, in which event the verdict, judgment, and order denying motion on the minutes are vacated; otherwise, the judgment and orders are affirmed, with costs. All concur.