# Court of General Sessions—County of New York.

September, 1901.

## THE PEOPLE v. VICTOR S. FLETCHER.

(35 Misc. 779.)

NEW TRIAL FOR NEWLY DISCOVERED EVIDENCE.

> Defendant offered for sale a violin, which he asserted was a genuine Stradivarius. It was identified as having been stolen from B. Defendant was arrested and arraigned, but the magistrate decided that the violin was not the one stolen and discharged him. Subsequently he was indicted, and on the trial produced a violin which five witnesses swore was the one produced before the magistrate, but ten swore was not. He was convicted, but now asks for a new trial on the ground that the stolen Stradivarius has been found under circumstances which, if true, would preclude his having it in his possession at the time of his arrest. Held, that considering the uncertainty and the wide divergence of expert opinion on the identity and authenticity of the Stradivarius, and the difficulties which beset the former trial, conflict of testimony, etc., and that the stolen violin is now produced, that justice required that a new trial be granted.

Motion for a new trial upon the ground of newly-discovered evidence.

Austin G. Fox and John T. Canavan, for motion.

Eugene A. Philbin, District Attorney, opposed.

GOFF, R.: The defendant was convicted of receiving a Stradivarius violin which he knew to have been stolen from Professor Jean Bott. He offered for sale a violin which he asserted was a genuine Stradivarius, and by request took it to a house for examination, where it was identified as the stolen Bott violin. On leaving the house the defendant was arrested with the violin in his possession and arraigned before a magistrate. After hearing the magistrate decided that the violin

found in the defendant's possession was not the stolen Bott violin and discharged him, directing that the violin be returned to him.

Subsequently the defendant was indicted, and on his trial produced a violin which five witnesses swore was the violin which was produced before the magistrate, while ten witnesses swore that it was not; that it was simply an imitation of the genuine Stradivarius.

Upon this conflict of testimony an issue was raised as to the identity of the violin and the jury decided against the defendant. Of course, there were other questions which were considered by the jury in reaching a verdict, but the question of the identity of the violin was certainly an important one. The defendant appealed and the Appellate Division of the Supreme Court, by Mr. Justice PATTERSON, in affirming the conviction, declared that the charge of criminally receiving stolen goods was proven to a legal certainty as far as that may result from weighing conflicting testimony.

Now comes the defendant and moves for a new trial on the ground of newly discovered evidence, which, in brief, is that the stolen Stradivarius has been found, and that under circumstances which, if true, would preclude the possibility of the defendant having it in his possession at the time of his arrest.

One fact is basic, and that is that a Stradivarius violin was stolen from Professor Bott on the 31st of March, 1894. In tracing the violin from that point two channels may be pursued, only one of which can be the true one. The channel which has been pursued has led to the condemnation of the defendant, and he now claims that that was not the true channel of inquiry, but that the one recently discovered is. In support of this claim a number of affidavits were presented and a large number of witnesses were examined and cross-examined at great length.

A very brief abstract of this testimony shows that on March 31, 1894, the day on which the violin was stolen, there was pawned in the pawn office of Benjamin Fox in this city a violin

for four dollars and twelve cents, in the name of Hughes. When the legal time for redemption expired this violin was, with other articles, put in the pawnbroker's auction sale on April 24, 1895, and bought in by the pawnbroker. In the beginning of December, 1895, the violin was sold for twenty dollars. About four years ago one James Dooley went to Fox's pawn office and bought a violin for twenty dollars. This violin he pawned in several pawn offices, and each time redeemed it. He knew a family named Springer, whose son played the violin, and he brought the violin to them, and after some negotiating sold it to them. It was recognized by several experts as a very fine violin, and finally as a Stradivarius. Knowledge of its character circulated among violinists, until finally detective officers seized it and produced it in court on this motion. Dooley identified the violin as the one he had bought in the pawn office and sold to Springer. Springer identified it as the one he had purchased from Dooley. Pezzoni identified it as the one upon which he had made some repairs for Springer. Several violin makers and experts who had seen the Bott violin before it was stolen identified it as the stolen Stradivarius, and finally Mrs. Bott by certain marks and characteristics identified it as the violin that had been stolen from her husband.

For the first time in the history of this case there is an unanimity of opinion and statement of fact, that the violin now in court is the stolen Stradivarius. Therefore it may be safely assumed that the corpus of the crime is before the court. How did it come there? If this violin be the one that was taken from Springer, that was purchased by Springer from Dooley, that was purchased by Dooley from the pawn office, and that was pawned on the 31st of March, 1894, it follows that it was the Bott violin that was pawned, and, that being so, it further follows that the defendant could not have had the Bott violin with him at the time of his arrest. One indisputable fact stands out, and that is the identity of the violin. As to the integrity of its history, in the means and manner of its dis-

covery and production, it is not necessary that I should express an opinion. It was a jury that convicted the defendant, and a jury should pass upon the value and good faith of the newly discovered evidence.

The question is not what I think of the evidence, but what in my opinion would a jury think of it, and my opinion is that if the evidence of the discovery of the violin, coupled with its production in court, had been before the jury, and believed by them, the result would probably have been different. This opinion in nowise detracts from the meritorious character of the verdict pronounced by the jury. It was just and fully warranted on the evidence before them. Nor can the defendant justly claim that he did not have a fair trial on the law and on the facts. That he did was demonstrated by Mr. Justice PATTERSON in the clear and exhaustive opinion which he delivered on the affirmance of the conviction.

But the defendant claims that since his trial and conviction the stolen violin, which was not present at his trial, has been discovered; that evidence as to its possession and location has also been newly discovered, and that the production of the violin and the newly discovered evidence on a new trial would result differently from his former trial.

The purpose of the administration of the law is justice. That is the object which all its rules and provisions are designed to accomplish. It is always in order to do justice. To grant a new trial under proper restrictions as to evidence newly discovered is one of the beneficient means by which a court can do substantial justice.

The English courts will not grant new trials in cases of felony, but will recommend a pardon. The courts of our State, more considerate of the defendant, will in a proper case grant a new trial. There is no hard and fast rule as to what is a proper case. Each case must be judged by its merits. Smith v. Matthews, 21 Misc. Rep. 150. In Barrett v. Third Ave. R. R. Co., 45 N. Y. 628, the Court of Appeals say:

"Motions . . . for a new trial upon the ground of newly discovered evidence, are not governed by any well-defined rules, but depend in a great degree upon the peculiar circumstances in each case. They are addressed to the sound discretion of the court, and whether they should be granted or refused involves the inquiry whether substantial justice has been done, the court having in view solely the attainment of that end." In Clegg v. N. Y. Newspaper Union, 51 Hun, 237, the court said that the test on motions for a new trial was substantial justice.

Considering the uncertainty and the wide divergence of expert opinion on the identity and authenticity of the Stradivarius and other violins of the recognized masters and the difficulties which beset the former trial, owing to the fact that the stolen violin was not present, and that there ensued a conflict of testimony as to its model, marks and characteristics, and that now that the stolen violin has been discovered and that its production in court will set at rest all questions as to its identity, I am of opinion that justice requires that a new trial be granted, and it is so ordered.

New trial granted.