(44 Misc. Rep. 540.)

HAGEN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Special Term, Oneida County.   July, 1904.)

1. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.
   A party moving for a new trial on the ground of newly discovered evidence must show that it will probably change the result of the previous trial; that it is newly discovered, and that by the exercise of due diligence it could not have been discovered before the trial; and that it is material to the issue.

2. SAME.
   The court should grant a new trial where by reason of newly discovered evidence a different outcome is probable.

3. SAME—NEGLIGENCE OF GUARDIAN.
   A new trial for newly discovered evidence will not be denied for lack of diligence of plaintiff's guardian in not producing it at the trial.

4. SAME—CUMULATIVE EVIDENCE.
   Where newly discovered evidence, though cumulative, is of such character that it is likely to produce a different result, a new trial should be granted.

5. WITNESS—CREDIBILITY—IMPEACHMENT.
   Where the general credibility of a witness is assailed, and the evidence detracts from the force of the testimony given by such witness, he is impeached, though the impeaching evidence is without probative force as original evidence on the matter at issue.

Action by John J. Hagen, by Michael E. Hagen, his guardian ad litem, against the New York Central & Hudson River Railroad Company.   Verdict for defendant.   Motion for new trial.   Granted.
See 80 N. Y. Supp. 580.

White & Ryan (William Kennedy, of counsel), for the motion.
W. E. Lewis (Lewis, Watkins & Titus, of counsel), opposed.

SCRIPTURE, J.   This is a motion for a new trial upon the ground of newly discovered evidence.   The motion is founded upon a case and exceptions, and the affidavit of the plaintiff and the affidavits of the three new witnesses, Kellar, Heath, and Finnerty.   The defendant reads in opposition the affidavits of John Garvey and Thomas D. Watkins, and the record of conviction of Henry Heath for assault and battery, and of Thomas Finnerty for public intoxication.   The action was commenced by service of summons on July 14, 1898; complaint served August 5, 1898; answer served October 13, 1898.   Plaintiff and defendant as above.   There has been no change of parties in the case.

The action is one in negligence.   The complaint alleges that on July 20, 1895, the defendant received the plaintiff into its cars at Frankfort for the purpose of conveying him as a passenger upon an excursion from Frankfort to Sylvan Beach and return to Mohawk, and from there to Frankfort; that, while the train upon which plaintiff was proceeding easterly from Frankfort was in motion, the defendant ejected the plaintiff from the cars, and as a result the plaintiff received the injuries claimed upon.   The answer is a general denial, and contains an allegation of contributory negligence on the part of the plaintiff.

¶ 4. See New Trial, vol. 37, Cent. Dig. § 218.

On the 20th day of July, 1895, the Frankfort Mutual Benefit Association.of the West Shore Shops, which was composed of railroad men residing in and about Frankfort, in the county of Herkimer, arranged for and conducted an excursion to a place known as "Sylvan Beach." For this purpose a special train was chartered by a committee duly authorized, and this train was run over and upon the defendant's road in two sections, one of which was in charge of a man by the name of John Garvey, a member of the association, selected by the defendant. The plaintiff, Hagen, who at that time was a lad 13 years of age, was in the employ of a firm which had bought the right to peddle refreshments upon this train; and when Garvey's section reached Frankfort, on its return from Sylvan Beach, Hagen got on board, and started to walk up the steps at the west end of one of the cars. When he had reached the platform of the car, the evidence tends to show that Mr. Garvey came out of an adjoining car and ordered Hagen off; telling him that, if he did not obey, he would kick him off. Hagen then turned round, put both hands upon the railing of the steps, and went down to the bottom step, where he waited about 15 seconds, more or less, with his left hand upon the railing, when, as he says, there was a sudden jerk of the cars, which threw him off, and he fell to the ground, with his feet under the car, and was so seriously injured that it became necessary to amputate his left leg about three inches above the ankle. His right foot was also crushed, and about 10 days later it became necessary to amputate that, also, at the middle of the instep. At the time Hagen was thrown off in the manner above stated, the train was moving at the rate of five miles an hour, but no claim is made by the plaintiff that the defendant was negligent in any respect in the management of the train; the contention being that he was wrongfully ordered off by Garvey, who was temporarily in charge of the train. The evidence of Garvey and the defendant's witnesses tends to show that plaintiff was not ordered off, or in any way interfered with, but received his injuries through his own negligence.

The first trial was before Justice Williams and a jury in May, 1899; the second, before Justice Andrews and a jury in June, 1900; the third, before Justice Merwin and a jury in January, 1902. The trials were held at Utica, and each resulted in a disagreement of the jury. The case was on the first day's calendar for the fourth trial at Rome, March, 1902, but, owing to the severe illness of Mr. Watkins, application was made to postpone the trial until later in the term, which was granted, and case set down for trial the latter part of March. Mr. Watkins not having sufficiently recovered his health, application was again made for further postponement. The court reluctantly granted the request, and postponed the trial of the case to the 23d of April. There being no further business before the court, those of the jury who could not conveniently return in April were excused, and the term adjourned. On the 23d of April the courthouse was being repaired, and the trial was held in my chambers, consisting of three rooms on the ground floor, barely large enough to accommodate the attorneys, witnesses, and jury. The jury was impaneled, and the balance of the jury were discharged for the term. There was much feeling manifested in the beginning of the trial by the respective counsel; owing, I take it, to the three dis-

agreements theretofore in the case. They were very suspicious of each other, and the accusations and charges between them became very annoying, and interfered somewhat with the conduct of the trial. On the 25th of April the case was finally submitted to the jury, and they retired to deliberate in the room over the chambers. The same evening they returned into court, and reported that they stood 10 to 2, but were unable to agree. They retired, and again returned into court at 11:30, April 26th. On that occasion I said:

"I am surprised that in a case of this kind you have not been able to agree before this time. With my knowledge of the honorable conduct on the part of all of you on this jury during the March term of court, in every case that you sat on, I am certainly surprised that in this case you cannot get together. This case has been tried four times. There are a great many witnesses in it. It is a very important case, and the truth of the matter should prevail. I do not want to have you feel as though I am hard in this matter at all, by keeping you out; but I really feel it my duty to the parties in the case, and in the interest of justice, not to discharge you at this time. It would seem, gentlemen, that when a jury stands, as it has been stated by some of your number last evening, 10 to 2, that you ought to agree. If there is any trouble in regard to the evidence, or in regard to the effect of admissions that may have been made, the court will be only too glad to restate the respective positions of the parties, if it can aid you in arriving at the truth and a just and honorable and decent verdict in this case. It is too bad that in the city of Rome, where none of these parties interested on either side reside, have nothing to do with the people here, where there should not be any influence one way or the other—it is too bad that you twelve men, who have been upon a term of court lasting four weeks before this, and have agreed in all cases that have been submitted to you, and have rendered just and conscientious verdicts, should disagree in this case."

"One of the Jurors: You spoke about the admissions—the admissions about those boys. Of course, there are some points about those admissions that some of us believe to be untrue, and some we believe are true."

"The Court: Now, I will tell you in regard to admissions. Admissions should be scrutinized by you all carefully, because they are not the direct issues. In this case admissions that are favorable to the plaintiff, admissions that are favorable to the defendant, should all be scrutinized carefully, because they are not, in a sense, the main issue before you. With reference to the admissions or statements of a witness by the name of Slocum: There are many witnesses who have testified, and apparently respectable witnesses, that Slocum made threats in Van Dusen's Coalyard, I think it was, that he was going to make a lot of money out of this case by being a witness, and that he was going to testify that he saw this man Garvey kick this boy off the train. Well, now, Slocum has been sworn, and he has not sworn to anything of that kind. All that Slocum has sworn to in reference to that, as I remember the evidence—and, if there is any question about it, I will have the reporter read it—is that he saw Garvey come through the car, and saw Garvey at the time he spoke to the boy, and heard Garvey tell the boy to get off. He does not swear that Garvey kicked him off, or anything of the kind. So that, as far as that admission is concerned of the statement made to these people, even if he stated it just as they claimed he stated it, he did not, as a matter of fact, or has not got upon the stand and sworn to any such thing. And so it is with reference to the statements of admissions that are made by the plaintiff's witnesses, where they claim that Garvey stated that he ordered him off, and that he was sorry he did, in substance. You should scrutinize those carefully. They may not be as claimed by the plaintiff's witnesses. They may have misunderstood Garvey entirely on the subject, and Garvey may have misunderstood them, and he may have made no statement on the subject whatever. And so it is with the admissions made by the boy with reference as to how he was injured. In some cases he said he was jerked off, or fell off, or something of that kind, in the movement of the car. Get, if you can, right down to the meat of the case,

and what was done on the car at the time that the boy received his injuries. Was Garvey on that train? Garvey said he was on the train, but Garvey says he did not see the boy. The boy says he saw him and ordered him off. Slocum says he heard the statement made by Garvey to the boy. And another witness, Anderson, says that Garvey was there near the boy, and there is a man named Brackett who swears he heard a voice. Now, gentlemen, what was the truth? If Garvey ordered that boy off, and the boy, in getting off, was apprehensive, and reasonably had a right to fear bodily harm if he did not get off, and, in getting off, without fault on his part, was injured, then, if the plaintiff was not negligent, and the boy was injured through the direct cause of the ordering off, so to speak, of Garvey, you should find a verdict in this case for the plaintiff. If Garvey did not order the boy off, or did not see the boy at all, then you should find a verdict in this case for the defendant."

Thereafter, and on the same day, the jury rendered a verdict for the plaintiff for $8,000 damages.

The record of this trial does not contain all of the facts and circumstances relating to the place where the trial was held or the conduct of the respective counsel from time to time, from the beginning of the trial to its close. In fact, the record would indicate that the trial justice understood how the jury were divided in their views, before they made any public announcement thereof, and the remarks of the learned court in granting a new trial in this case were justified from the record before it. I am sure, if the court had all of the facts and circumstances as they actually existed before it, that a new trial would not have been granted in this case. This case was tried in my chambers, as I have said before, and the attorneys of the respective parties exhibited much feeling, and, I am sure, conducted themselves differently than they would if they had been in court during the progress of the regular term in the main courtroom. Their accusations and charges against each other were severe and vicious, and it was some time before they were courteous and gentlemanly with each other. Their suspicions up to the time of the submission of the case to the jury were, in my judgment, entirely unfounded, and there was no just occasion for their actions. Practically the same witnesses were sworn on the first and second trials. On the third and fourth, plaintiff swore, in addition, a witness by the name of Irwin Anderson, and one by the name of Edward Brackett. The case was again tried at the Rome March term, 1903, before me and a jury. The jury retired late in the evening, and were evenly divided, but in the forenoon of the next day found a verdict for defendant. At this trial the plaintiff swore for the first time Levi Osborn and a witness by the name of Van Epps Perigo.

On the argument of this motion for a new trial, it was conceded that only one ground could be considered, to wit, for newly discovered evidence. The plaintiff contended that the evidence of his proposed new witnesses was material, and would change the result of the verdict, while the defendant contended that the witnesses were not worthy of credit, and that the proposed new evidence was cumulative, and that plaintiff had utterly failed to show due diligence in procuring the same. It is essential on the part of the plaintiff to show that the new evidence will probably change the result, that he has discovered it since the trial, that he could not have discovered it by the exercise of due diligence before the trial, and that it is material to the issue. I have no doubt

the evidence proposed is material to the issue. It tends to corroborate and sustain the plaintiff's theory. In my opinion, the weight of evidence was against the verdict rendered, and this new evidence will change the result. The plaintiff has discovered this new evidence since the trial. It is claimed he could have discovered it before the trial, if he had exercised due diligence, and his excuse that he is a cripple, and has three attorneys in charge of his case, and supposed all of the witnesses who knew about the case were subpoenaed, does not comply with the rule. I am inclined to hold that his affidavit and the excuses made are sufficient. The plaintiff, being an infant, could have maintained this action after he was 21 years of age. Independently of plaintiff's affidavit, I believe it to be the duty of the court to protect and guard the infant's rights, and especially when the infant is of tender years. In case the guardian fails to prepare his ward's case for trial, the court will see to it that such neglect of duty does not defeat the substantial rights of the infant. I am not aware that the courts have ever held that the failure of the guardian to use due diligence in procuring evidence will defeat a motion on the part of the infant for a new trial. If this were an action on the part of the father for loss of services, there would be no doubt but that he would have to meet the requirements of the law, and exercise due diligence, before he could secure a new trial. The question of credibility is one for the jury, and whether such new witnesses are entitled to credit or not ought not to be determined on this motion. That question belongs to the trial court. In the disposition of this motion, it will not be assumed that the witnesses speak falsely, nor will the question of their credibility be passed upon. Upington v. Keenan (Sup.) 21 N. Y. Supp. 699; Phelps v. Delmore (Sup.) 26 N. Y. Supp. 279; Peyser v. Coney Island & Brooklyn R. R. Co., 81 Hun, 77, 30 N. Y. Supp. 610. If a different outcome is probable, and the jury can fairly reach another conclusion, then the court, in the exercise of its legal discretion, is justified in ordering a new trial. There is no absolute rule prescribed for the decision of motions of this kind. Each case is a law unto itself, and the promotion of substantial justice is the aim in their determination. Smith v. Matthews, 21 Misc. Rep. 150, 47 N. Y. Supp. 96, and cases cited; Holmes v. Roper (Sup.) 10 N. Y. Supp. 284; Clark v. N. Y. C. & H. R. R. R. Co., 4 App. Div. 331, 38 N. Y. Supp. 563; Wilcox Silver Plate Co. v. Barclay, 48 Hun, 54. The rule which formerly obtained, that, where newly discovered evidence was cumulative, a motion for a new trial based thereon should be denied, has been, in furtherance of justice, virtually abolished. The proper inquiry is whether the newly-discovered evidence, whether cumulative or not, is of such a character that it is likely to produce a different result upon a new trial.

It is further urged that the motion should be denied because the evidence simply seeks to impeach the testimony of the defendant. But the evidence of the new witnesses, Kellar, Heath, and Finnerty, is not impeaching evidence, within the meaning of the rule. Evidence impeaches a witness when it assails his general credibility, or otherwise weakens the force of his testimony, and detracts from the weight to be given it, without having of itself probative value as original evidence

upon the matter at issue. Where, as here, it merely tends to show a different state of facts from that testified to by the defendant and some of the witnesses, and upon which the defendant founds its defense to the action, it contradicts, but does not impeach. If the rule claimed by the defendant should prevail, then no newly discovered evidence could ever be introduced, because it must necessarily, if of any consequence, contradict some witness who has sworn to the contrary. Keister v. Rankin, 34 App. Div. 288, 54 N. Y. Supp. 274; Hess v. Sloane, 47 App. Div. 585, 62 N. Y. Supp. 666. In Kring v. N. Y. C. & H. R. R. R. Co., 45 App. Div. 373, 60 N. Y. Supp. 1114; the plaintiff was a boy about 11 years of age, and, while a trespasser upon the defendant's railroad, sustained the injuries complained of. On the trial he and two disinterested witnesses testified that he was kicked from the car by the conductor, and three disinterested witnesses testified that he jumped from the train. The verdict was for the plaintiff. The defendant moved for a new trial based on the affidavit of three witnesses. Their failure to appear at the trial was properly accounted for, and their affidavit was to the effect that plaintiff jumped from the car of his own volition. Justice McLennan, writing for the court, said:

"Substantial justice is the end desired, and where particular circumstances are such, the closeness of the issue and the uncertainty of correctness in the determination of that issue exists, the party moving should have an opportunity to again present the case, with the new evidence that has been brought to light."

Courts will not deny to the plaintiff a new trial unless it be consistent with the conscience, justice, and the equity of the case to do so. The parties can ask nothing in the premises as a right. They only have a claim upon the discretion of the court, and this discretion should be watched with jealous care. The court says that the issues in the Kring Case are within narrow limits, and it can hardly be said that the weight of evidence is with the plaintiff. In the case at bar the weight of evidence was with the plaintiff, and the reasons for a new trial in the Kring Case exist in this case.

The particular circumstances surrounding the many trials of the case, and the disagreements of the jury, afford additional reasons why the motion should be granted. Let an order be entered granting the plaintiff a new trial on the payment of the costs and disbursements of the last trial.

Ordered accordingly.