### O'HARA v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   March 10, 1905.)

1. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

A new trial should be granted for newly discovered evidence if it appears that it could not have been obtained on the former trial by the exercise of reasonable diligence, that it is material to the issue, is not merely cumulative, and its character is such that it would probably have changed the result.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 201–229.]

**2. SAME.**

Where, in an action for injuries, plaintiff's most material witness on the subject of damages testified that she had slept with plaintiff during the month of August, 1902, when the injury occurred, and thereafter for about two years up to the time of the trial, and that after the injury plaintiff had hysterical convulsions, etc., but on a motion for a new trial she made an affidavit that her evidence at the trial was false; that she went to live with her cousin in April or May, 1902, and continued to live with her until April, 1903, when she went to live with another woman, and lived there until August, 1903, up to which time she never spent a night with plaintiff; and this affidavit was corroborated as to the places where she lived by A., who testified that on no evening during the time witness lived with her did she ever sleep with plaintiff —it was error for the court to refuse a new trial.

Hirschberg, P. J., and Hooker, J., dissenting.

Appeal from Kings County Court.

Action by Lucy O'Hara, an infant, by her guardian ad litem, against the Brooklyn Heights Railroad Company. From an order denying a motion for a new trial on the ground of newly discovered evidence, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

I. R. Oeland, for appellant.

J. Stewart Ross, for respondent.

WOODWARD, J. This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant, and has resulted in a verdict in favor of the plaintiff for $2,000. The motion for a new trial was made upon the minutes and upon the affidavits of Francis R. Stoddard, Jr., Mary Smith, Mary Adams, Elizabeth Van Houten, Margaret Bradley, Theresa Westburgh, Wilhelm Schmidt, Gideon D. Hobart, M. D., Joseph Schweinfist, Perley M. Coddington, L. Olinger, Mary Galligan, and Isaac P. Smith, and these affidavits tend to show that the verdict of the jury, in so far as it related to the damages at least, was procured through perjury and subornation of perjury. The rule which should govern in considering a motion of this character is well settled. It must appear that the evidence has been discovered since the trial; that it could not have been obtained upon the former trial by the exercise of reasonable diligence; that it is material to the issue, and goes to the merits of the case; that it is not merely cumulative; and that its character is such that it would probably have changed the result. Kring v. N. Y. Central & H. R. R. R. Co., 45 App. Div. 373, 378, 60 N. Y. Supp. 1114, and authorities there cited. And as was said by Allen, J., in Barrett v. The Third Avenue R. R. Co., 45 N. Y. 628, 632:

"Motions to set aside verdicts as contrary to evidence, as well as motions for a new trial upon the ground of newly discovered evidence, are not governed by any well-defined rules, but depend in a great degree upon the peculiar circumstances of each case. They are addressed to the sound discretion of the court, and whether they should be granted or refused involves the inquiry whether substantial justice has been done, the court having in view solely the attainment of that end."

Vollkommer v. Nassau Electric R. R. Co., 23 App. Div. 88, 48 N. Y. Supp. 372; Kring v. N. Y. Central & H. R. R. Co., 45 App. Div. 378, 60 N. Y. Supp. 1114.

Examining the case and affidavits in the light of these rules, it is difficult to understand why the motion for a new trial should have been denied. The affidavits show that the evidence was discovered after the trial, and that it could not have been obtained before is evident from the fact that it consists in a large measure of an affidavit of one Mary Smith, to the effect that she testified, at the request of the plaintiff, to a state of facts which was untrue upon the trial. The evidence of this witness, now alleged to be false, was most material to the case; and, while some of the matter contained in the affidavits is cumulative in a measure, it is not merely cumulative. The case is therefore well within the rule, and, as it cannot be contended that a verdict for $2,000, supported almost wholly as to the damages by prejury, is consistent with substantial justice, it follows that a new trial should have been granted, unless the affidavits were such as to be entirely discredited. If the newly discovered evidence consisted wholly of the affidavit of Mary Smith, it might well be that the learned court below would be justified in ignoring it upon the question presented; but a careful reading of the affidavits submitted in connection with this one shows a degree of confirmation by witnesses who have no possible interest in the result of this action, which ought not to fail to command consideration, if the ends of justice are to be subserved. It was claimed on the part of the plaintiff that the injuries had resulted in hysterical convulsions, major hysteria, or hystero-epilepsy, and in support of this proposition Mary Smith was called, and testified that she had slept with the plaintiff during the month of August, 1902, and that she was informed of the injuries to the plaintiff, which are alleged to have been sustained about the 20th of August of that year, and that after that date she slept with the plaintiff for about two years, up to the time of the trial. She also testified that she had slept with her for three months before the accident, and that during that time she never noticed anything wrong about the plaintiff during sleep; that after the accident she slept restless, and used to wake up in these fits, which occurred three or four times during the night; that these fits happened four or five times a week after the accident; that they continued frequently now, but not so frequently as at first; that when the plaintiff takes these fits she closes her hands and eyes and grinds her teeth and cries. This, if true, would go far to support the verdict of the jury, but now this same witness makes an affidavit in which she says:

"I went to live with my cousin, Mrs. Adams, at 68 Fourth Place, in April or May, 1902. I continued to live with her after she moved to 121 Third Place, where I remained until April 12, 1903. On April 12, 1903, I went to live with Mrs. Theresa Westburgh at 264 Chester street. When Mrs. Westburgh moved to 134 York street I went with her, and stayed with her there until August, 1903. Up to this time I never slept with Lucy O'Hara, and did not even spend a night with her in her house. During October, 1903, Lucy O'Hara and I went to work together for Olinger, a manufacturer of children's clothing, then situated on Watkins street, near Lavonia avenue.

While Lucy O'Hara worked there she worked steadily with the exception of two days, when she was off with the toothache, and she always was healthy while she was there, and never fainted, or had any fits or other sickness."

She also says that in January, 1904, she received a subpœna, and, supposing it to relate to a matter in a police court, she went to the plaintiff to find out the trouble. That she was then told that the action was one against the defendant, and that the plaintiff—

"Then asked me to testify that I had slept with her for three months previous to August 20, 1902, and for a year and three-quarters afterwards. Upon her persuasion I agreed to do this, and I took the stand, and swore that I had slept with Lucy O'Hara for three months prior to August 20, 1902, and for a year and three-quarters afterwards. I also swore that she had fits or epileptic seizures during the night. As a matter of fact, I never slept with Lucy O'Hara until August, 1903, and I never saw her have a fit in bed, or be seized with any kind of illness. Lucy O'Hara has always been in good health, and has been, to my knowledge, a strong girl. I testified because I am a friend of Lucy O'Hara, and I wished to oblige her all I could; but it was only after her request that I decided to do so. Lucy never told me that she had had an accident until the night before the case was tried."

Conceding that the witness, as a conceded perjurer, might be disregarded, she is corroborated in her statements as to the places where she lived by Mrs. Mary Adams, who says that the witness "slept in my house every night during the time she was with me. On no evening during the time she was with me did she ever sleep with Lucy O'Hara, who is slightly known to me." This covered the period from March or April, 1902, to April 12, 1903; and other persons declare under oath that Mrs. Smith and the plaintiff did not sleep together during the remainder of the time under consideration. No reason for discrediting these corroborating witnesses is suggested, and it must be clear that, if Mary Smith's false evidence was out of this case, the jury would be justified, if not compelled, to find a different verdict from that rendered. Moreover, Mrs. Theresa Westburgh, a sister of the plaintiff, makes an affidavit contrary to her testimony upon the trial, and in this she is corroborated by others who have no interest in the case, and the record upon this motion shows a state of facts which demands that a new trial be granted.

The order appealed from should be reversed, and the defendant should be given a new trial.

Order of the County Court of Kings county denying motion for new trial on the ground of newly discovered evidence reversed, and motion granted on condition that the appellant, within 20 days, pay all the costs of the former trial and of entering judgment, together with $10 costs of the motion. In default of compliance with this condition, judgment and order and order denying motion for new trial affirmed, with costs. If the condition is complied with, the judgment is vacated, without costs. All concur, except HIRSCHBERG, P. J., and HOOKER, J., who dissent.