the authority and control which the fire department officers assumed was within their power.

Up to 1881, the fire department of the city seems to have consisted exclusively of volunteer firemen, who served without pay, among others the company to which the relator belonged. Chapter 517 of the Laws of 1881 provided for the appointment of a board of fire commissioners. It required the board to organize fire companies to appoint firemen thereto and pay them reasonable compensation, the number to be appointed and paid not to exceed 25; but the board might authorize the chief engineer in cases of emergency to appoint additional firemen. The board of fire commissioners organized a paid fire department, but the volunteer fire companies do not seem to have been disbanded. They continued to act with the paid fire department, attending fires and performing the duties of firemen under the orders of the chief engineer and officers of the fire department and the general control of the board. The board not only purchased uniforms and other articles for the use of the relator's company, but recognized him as an active member, and upon the certificate of the foreman and secretary of his company, confirmed by the chief engineer of the fire department, granted him a certificate of honorable discharge after five years' service as a member of the fire department.

I do not think it necessary that the relator's company should have been organized as a corporation to entitle him to the protection of the provisions of the civil service law, to which attention has been called; nor that he should have received compensation for the services which he rendered as a fireman. Practically he was a member of the city fire department; a volunteer serving without pay; faithfully served his time; was so recognized by the city officers; and I think they should not now be heard to say that he is not entitled to the advantages and protection which the law gives to honorably discharged volunteer firemen.

The point is made that, if the relator has any legal grievance, he has mistaken his remedy. I think not. In a case like this, where no hearing at all was had, mandamus, I think, is the proper remedy.

I think the peremptory writ should have been granted.

———————

HUESER v. NEW YORK TRANSP. CO.

(Supreme Court, Appellate Division, Second Department. March 17, 1911.)

1. NEW TRIAL (§ 107*)—NEWLY DISCOVERED EVIDENCE—PROBABLE PROBATIVE FORCE.

    The Special Term and the Appellate Division may, on a motion for new trial for newly discovered evidence, consider the reputation and character of the witnesses in determination of the probable probative force of their testimony.

    [Ed. Note.—For other cases, see New Trial, Cent. Dig. § 225; Dec. Dig. § 107.*]

2. NEW TRIAL (§ 108*)—NEWLY DISCOVERED EVIDENCE—PROBABLE CHANGE IN RESULT.

Whether the testimony of the witnesses at the first trial, reinforced by that of the newly discovered witnesses, would probably change the result, is a test that must be applied on motion for new trial for newly discovered evidence.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 226, 227; Dec. Dig. § 108.*]

3. NEW TRIAL (§ 108*)—NEWLY DISCOVERED EVIDENCE—PROBABLE CHANGE IN RESULT.

The proposed new evidence *held* not such that it would probably enable plaintiff to overcome the evidence produced by defendant, on the crucial question of whether its automobile, which struck deceased, veered out of the line of traffic, or whether he dodged into collision with it, so as to justify the granting of a new trial.

[Ed. Note.—For other cases, see New Trial, Dec. Dig. § 108.*]

4. NEW TRIAL (§ 89*)—SURPRISE.

Plaintiff, in an action for death from collision of an automobile with deceased, could not have been misled, by the concession of defendant before the trial that the death was due to the collision, to believe defendant admitted the collision was due to the veering of the automobile out of the line of traffic, or would not contend that the collision was due to plaintiff stepping into the path of the automobile, so as to be entitled to a new trial on the ground of surprise.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 177–180; Dec. Dig. § 89.*]

5. NEW TRIAL (§ 103*)—NEWLY DISCOVERED EVIDENCE—MATERIALITY.

Even if newly discovered evidence would probably convince the jury that defendant's automobile ran over deceased, and would bear on the credibility of defendant's witnesses, who testified that it did not pass over his body, this would not justify a new trial; the material question being not whether the machine ran over him, or merely struck him, but whether it veered out of the line of traffic, or he dodged into collision with it.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 215–217; Dec. Dig. § 103.*]

Appeal from Trial Term, Kings County.

Action by Julie S. Hueser, administratrix of Theodore A. Hueser, deceased, against the New York Transportation Company. From an order granting a motion for new trial, defendant appeals. Reversed, and motion denied.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, CARR, and WOODWARD, JJ.

Charles F. Brown (Theodore H. Lord, on the brief), for appellant. Fred. R. Rich, for respondent.

JENKS, P. J. This is an appeal from an order of the Special Term that grants a new trial to the plaintiff upon the grounds of newly discovered evidence and of surprise. The plaintiff's husband, attempting to cross Fifth avenue near Thirty-Fifth street in the borough of Manhattan, New York City, came in collision with the defendant's electric cab and received injuries that caused his death. This action is brought to recover damages for the defendant's negligence. The theory of the plaintiff was that her intestate had halted to permit the traffic to

pass, when the defendant's electric motor cab swerved out of the line of traffic and struck him. The defendant's version was that, as the intestate dodged in and out of the way of the vehicles in the street, he stepped back suddenly to avoid a vehicle and brought himself into collision with the defendant's cab then moving in the line of traffic.

The main question litigated was whether the defendant veered out from the accustomed line of traffic required in that street. The learned court without exception instructed the jury that, unless "the cab did come out of line and struck him (plaintiff's intestate), in no case could there be a verdict for the plaintiff." The contention of the plaintiff was supported at the trial by the testimony of her witnesses Wise and Sullivan, who were apparently disinterested, and who were in the avenue at the time of the accident about their business respectively. The proposed new testimony upon this issue is therefore cumulative. The new witnesses whose affidavits bear upon this issue are Engman, and perhaps Meagher. Engman, who was sewing in a window near by, deposes that he saw the electric brougham come up from behind, turning out at the middle of the street, going at an estimated rate of 25 miles an hour, and that it knocked the intestate down and dragged him for 15 feet. Meagher, who was walking in the avenue, had his attention arrested by a call, and looked to see the rear wheels of the brougham passing over the intestate. He deposes that the brougham was not following any other vehicle, but appeared to be passing a horse and carriage at the rate of 25 miles an hour. This testimony might permit the inference that the defendant's cab did not keep in line. Although credibility is a question for the jury, yet the Special Term and this court may consider the reputation and character of the proposed witnesses in determination of their probable probative force. Hagen v. N. Y. Central & H. R. R. R. Co., 100 App. Div. 218, 91 N. Y. Supp. 914. Now Meagher deposes that he was not called as a witness because he informed an inquirer on behalf of the plaintiff that he did not see anything of the accident save that the brougham ran on the sidewalk. And his avowed reason for his lie is that he had no desire to be drawn into the case, as he had "no time to lose and did not want to be bothered about it." Of course, as a witness he would speak under the sanctity of an oath or affirmation, but nevertheless we have the record of a deliberate lie for mere convenience, which he now repudiates to help "of his own volition" the widow of the intestate who had lost her support. Would the testimony of the former witnesses Wise and Sullivan, which was not considered by the jury as sufficient to establish the plaintiff's theory, reinforced by that of Engman and Meagher, probably change the result so that the jury would find that the defendant's car did veer out of the line of traffic to strike the intestate? For this is a test which must be applied. Kring v. N. Y. Central & H. R. R. R. Co., 45 App. Div. 373, 60 N. Y. Supp. 1114; O'Hara v. Brooklyn Heights R. R. Co., 102 App. Div. 398, 92 N. Y. Supp. 777; Hagen v. N. Y. Central & H. R. R. R. Co., supra; Baylies on New Trials, 374.

We may assume that the defendant's former witnesses are accessible and would adhere to their testimony. The chauffeur, not then in

defendant's employ, testified that he did not pull out of line and never moved out of it. Smith, who was walking in the avenue at the time, testified that the intestate was walking diagonally among teams; that he stopped, hesitated, and turned back and came right in front of the cab that struck him; that he turned and moved in front of it sideways. Hollyer, who was driving a horse and hansom, testifies that he saw the intestate leave the sidewalk 15 feet below the crossing and take a diagonal course, and that he stepped back against the dashboard of the cab. Sergeant Ryan of the police, in charge of the traffic at this point, testified that the intestate stepped right in front of the automobile; that the motor car did not turn out of the line, but followed a straight line with all of like cars. Burton testifies that he was in the avenue; that the intestate stepped off the curb 10 feet in front of him; that the intestate was "dodging" the vehicles, and in so doing he dodged back into collision with the cab, which was in the second line; and that he did not see the cab "swing out at any time" to pass vehicles in front. McCarthy, who was being driven in a cab, noticed the intestate "back in" and then saw him struck by the defendant's cab. He did not notice before the accident whether it had turned off to go around other vehicles. But he testifies:

"All were in one line of carriages coming down. This automobile was in this line."

I am not convinced that this new evidence would probably enable the plaintiff to overcome the evidence presented by the defendant upon the admittedly crucial point of the case.

I may comment that there was no suggestion of surprise made at the trial. The affidavit of one of the attorneys and counsel for the plaintiff shows that before the trial the defendant was requested to concede that the death was due to the collision, and that, accordingly, such concession was made on the record. The affiant further says that he had the right to rely thereon, that he was not required to make any preparation to meet any evidence that might be offered "as to the killing," and that he was nonplused at the trial by the defendant's testimony that the brougham "did not pass over the body of the deceased, but that the deceased backed into the brougham and struck his head against the dashboard, which, of course, was clearly evidence tending to show lack of negligence on the part of the defendant," and that it must "be evident * * * that neither deponent nor his said counsel could have had the slightest idea that such evidence would be offered." But there was no question raised that death did not ensue from the collision. And I fail to see how the concession that collision was the cause of death misled the plaintiff to believe that the defendant admitted that the collision was due to the veering out of line, or that the defendant would not contend that the collision was due to the conduct of the plaintiff in losing his head to step into the path of the cab. On the trial the plaintiff's witness Wise testified that the cab struck the intestate and dragged him underneath. Bowen testified that the cab ran over the intestate. Sullivan testified that the intestate fell under the cab and it dragged him. Sheehan, the chauffeur, testified that his "machine" did not run over the intestate. Smith testified that the

cab did not pass over the intestate, as did Hollyer and Sergeant Ryan. Meagher, the proposed new witness, and also Gelchrist, depose that the cab did run over the intestate, and Engman testifies that the cab dragged the intestate.

The probative force of Gelchrist's testimony is subject exactly to the consideration to be given to that of Meagher, which I have noted, because he too deposes that he lied, exactly as Meagher lied and for the same reason. I am not convinced that their cumulative testimony would convince the jury that the wheel of the cab ran over the intestate. But assume that it did. Would that circumstance convince the jury that the defendant's cab veered out of the line of traffic? Or does it follow that, because a motor cab runs over a pedestrian, he could not, or probably did not, come into collision with it by stepping in its way? It is true that the proposed new testimony might bear on the credibility of the defendant's witnesses, who testified that the car did not pass over the body; but the variance of the witnesses was not over a material issue, and bystanders may well honestly differ as to the details of such an accident, which is but the affair of a moment. The other suggested witnesses are two physicians, of whom one is the family physician of the plaintiff and the other is the coroner's physician. The first deposes that he examined the body, to find the fracture of several ribs, a puncture of the lungs, and a fracture of the arm, and the second deposes that death was caused by a multiple fracture of the ribs and the laceration of the lungs. But there was no dispute that the death was due to the collision, there was no contention that the intestate did not suffer such injuries, and such testimony would not bear on the question whether the cab veered out of the line to collide with the intestate. Nor would it render impossible or improbable the theory of the defendant that the intestate came into collision by stepping back or turning back into the way of the defendant's vehicle.

I advise that the order be reversed, with costs. All concur.